ACADEMY OF MEDICINE OF CINCINNATI ET AL., APPELLEES, *v.* AETNA
HEALTH, INC. ET AL.; UNITED HEALTHCARE OF OHIO, APPELLANT.

[Cite as *Academy of Medicine of Cincinnati v. Aetna
Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657.]

(No. 2004–0001—Submitted February 2, 2005—Decided March 1, 2006.)

PFEIFER, J.

## Factual and Procedural Background

{¶ 1} Plaintiffs-appellees, Academy of Medicine of Cincinnati, Butler County Medical Society, Luis Pagani, M.D., Paul Jennewine, M.D., Bradford H. Woodall, M.D., William Randall Cox, M.D., and Newton H. Bullard, M.D., allege that defendant-appellant, United Healthcare of Ohio ("United"), one of the largest providers of group health-insurance policies in Hamilton, Warren, Clermont, and Butler Counties, engaged in a conspiracy with other such providers to maintain artificially low reimbursement rates paid to physicians in the region in violation of the antitrust provisions of the Valentine Act, R.C. Chapter 1331.

{¶ 2} In response to appellees' complaint filed in Hamilton County Common Pleas Court, appellant moved to stay the trial court proceedings and compel arbitration of the antitrust claims. The motion was based on the arbitration clause in the physician-appellees' provider agreements with appellant. The clause requires binding arbitration of disputes "about [the parties'] business relationship."

{¶ 3} The trial court denied the motion to stay and to compel arbitration, reasoning that since the plaintiffs alleged a conspiracy of price fixing by the defendant and other providers, that dispute "[did] not arise out of or relate to the contracts between the Plaintiffs and Defendant[ ], nor [did] it involve disputes about the parties' business relationships." The court found that "[t]he parties never agreed to arbitrate claims that were independent of any breach of contract."

{¶ 4} The court of appeals affirmed the trial court, finding that the appellees' antitrust claims were not within the scope of the arbitration provisions in the provider agreements. Relying on this court's decision in *Council of Smaller Enterprises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, the appellate court set forth the test for determining the arbitrability of a given dispute:

{¶ 5} " '[T]he Ohio Supreme Court has adopted four rules, common to both state and federal courts, for reviewing decisions concerning a dispute's "arbitrability": (1) that "arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit"; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a "contract contains an arbitration provision, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " ' " 155 Ohio App.3d 310, 2003-Ohio-6194, 800 N.E.2d 1185, ¶ 12, quoting *Cohen v. PaineWebber, Inc.*, Hamilton App. No. C–010312, 2002 WL 63578, quoting *Council of Smaller Enterprises*, 80 Ohio St.3d at 665–666, 687 N.E.2d 1352, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648.

{¶ 6} This case revolves around the application of the first rule enunciated in *Council of Smaller Enterprises*, i.e., whether the parties agreed to submit the dispute at issue to arbitration. In determining whether a claim based upon an alleged conspiracy to set artificially low reimbursement rates was within the scope of the arbitration agreements between the parties in this case, the appellate court relied upon a federal case, *Fazio v. Lehman Bros., Inc.* (C.A.6, 2003), 340 F.3d 386. In *Fazio*, the Sixth Circuit Court of Appeals held that "a proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." Id. at 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.* (C.A.5, 1998), 141 F.3d 243, 250–251.

{¶ 7} Applying *Fazio*, the appellate court concluded that "the doctors' antitrust claim could be maintained without reference to their individual provider agreements." 155 Ohio App.3d 310, 2003-Ohio-6194, 800 N.E.2d 1185, ¶ 5. The court found that "[t]he allegations that the HMOs, which controlled a majority of the health-care market in this region, colluded to fix reimbursement rates to medical practitioners arose out of actions that occurred prior to the existence of the

underlying provider agreements or business relationships between the doctors and HMOs. The allegations did not even presume the existence of an underlying provider agreement." Id. at ¶ 6.

{¶ 8} Since the court found that the doctors' cause of action could be maintained without reference to the individual provider agreements, it held that the antitrust claims were not subject to the arbitration provision in the provider agreements.

{¶ 9} Appellant appealed. This court granted appellant's jurisdictional motion on a limited basis, ordering briefing only on the following issue: "In determining whether a cause of action is within the scope of an arbitration agreement, may a state court in Ohio base that determination on a federal standard that inquires whether the 'action could be maintained without reference to the contract or relationship at issue?' *Fazio v. Lehman Bros., Inc.* (C.A.6, 2003), 340 F.3d 386, 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.* (C.A.5, 1998), 141 F.3d 243, 250–251." 102 Ohio St.3d 1407, 2004-Ohio-1860, 806 N.E.2d 559.

## Law and Analysis

{¶ 10} "Ohio and federal courts encourage arbitration to settle disputes," *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574, and Ohio has generally relied at least in part on federal law in developing its own jurisprudence. This court enunciated the four principles that guide determinations of arbitrability in *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352, relying heavily on *AT & T Technologies*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648. This court held:

{¶ 11} "The first principle is that ' "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.' *AT & T Technologies*, 475 U.S. at 648–649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting [*United Steelworkers of Am. v.*] *Warrior & Gulf* [*Navigation Co.* (1960) ], 363 U.S. [574] at 582, 80 S.Ct. [1347] at 1353, 4 L.Ed.2d [1409] at 1417.

{¶ 12} "The second principle is that 'the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

{¶ 13} "The third rule is, 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential

merits of the underlying claims.' *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

{¶ 14} "The fourth principle is that 'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra,* 363 U.S. at 582–588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417." *Council of Smaller Enterprises,* 80 Ohio St.3d at 665–666, 687 N.E.2d 1352.

{¶ 15} Thus, with its reliance on federal precedent, this court has itself abundantly shown that a state court may rely on a federal standard in applying Ohio law on the issue of arbitrability. However, that standard must be consistent with Ohio law and must reflect a correct statement of the applicable federal jurisprudence. The appellate court's reliance on *Fazio* is appropriate in both regards.

{¶ 16} The only issue before us is whether the court of appeals employed a proper test for determining the scope of the arbitration clause at issue, i.e., whether the parties agreed to submit this dispute to arbitration. "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859.

{¶ 17} We look first to whether the arbitration clause itself or the statute at issue contains limitations as to arbitrability. Had the parties removed statutory claims from the scope of the arbitration provision, or had the General Assembly "evinced an intention to preclude a waiver of judicial remedies for the statutory rights" created by the Valentine Act, appellee's claims could not have been within the scope of the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444. However, the arbitration clause at issue does not remove statutory claims from the scope of the agreement, and the Valentine Act does not preclude a waiver of judicial remedies for the rights it creates.

{¶ 18} Our next consideration is whether the arbitration clause limits itself only to certain aspects of the underlying contract. "To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the Court must 'classify the particular clause as either broad or narrow.' *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 224 (2d Cir.2001). An arbitration clause that contains the phrase 'any claim or controversy arising

out of or relating to the agreement' is considered 'the paradigm of a broad clause.' *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995)." *ADR/JB, Corp. v. MCY III, Inc.* (E.D.N.Y.2004), 299 F.Supp.2d 110, 114. The arbitration provision in this case purports to cover any disputes about the parties' business relationship and must be considered a broad clause.

{¶ 19} Arbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue. *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. 3346, 87 L.Ed.2d 444. "There is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights." Id. In *Mitsubishi*, the court found that an agreement to arbitrate antitrust claims is not void as against public policy. Id. at 632–636, 105 S.Ct. 3346, 87 L.Ed.2d 444.

{¶ 20} *Mitsubishi* does not make every antitrust claim arbitrable between parties to an arbitration agreement. Statutory claims, including antitrust claims, are neither per se arbitrable nor nonarbitrable. Those claims must undergo the analysis that every other claim faces: whether the parties agreed to arbitrate the issue. In *Mitsubishi*, the lower court had found (and the plaintiff did not dispute on appeal) that each element in the mix of allegations that yielded the plaintiff's antitrust claim individually implicated a provision of the sales procedure agreement between the plaintiff and Mitsubishi. Id. at 622, 105 S.Ct. 3346, 87 L.Ed.2d 444, fn. 9.

{¶ 21} In *Coors Brewing Co. v. Molson Breweries* (C.A.10, 1995), 51 F.3d 1511, the court concluded that although the arbitration clause at issue encompassed antitrust claims generally, some of the antitrust causes of action Coors Brewing Company brought against Molson Breweries of Canada Limited were outside the scope of the contract between the two companies. In that case, Coors had a licensing agreement under which Molson would brew and distribute Coors products in Canada. Later, Miller Brewing Company entered into a partnership with Molson, making Molson the exclusive distributor of Miller products in Canada, and Miller the exclusive distributor of Molson products in the United States. Coors alleged, among other things, that the Miller–Molson alliance was a combination in restraint of trade, lessening competition in the United States and North American beer markets. The *Coors* court found that Coors could litigate any antitrust claims against Molson not related to its licensing agreement, just as anyone else with standing could. Id. at 1517. The existence of a contractual relationship between Coors and Molson did not mean that every conceivable claim between the two was arbitrable.

{¶ 22} The *Coors* court points out the absurdity of a contrary holding:

{¶ 23} "A dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims. * * * A contrary reading of *Mitsubishi* not only ignores the facts of that case, but also could lead to absurd results. For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship." 51 F.3d at 1516.

{¶ 24} The *Fazio* test applied by the court below helps determine whether the contractual relationship between parties is irrelevant or controlling. Since courts must sift through pleadings to determine whether a cause of action labeled as a tort or statutory claim is essentially a cause of action based upon the contract, we agree with *Fazio* that "a proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue." Id., 340 F.3d at 395.

{¶ 25} The facts of *Fazio* itself demonstrate that its rule is consistent with a policy favoring arbitration. In *Fazio,* a Cleveland stockbroker, Frank Gruttadauria, had misappropriated at least $54 million of his clients' money. He had sent falsified statements to clients overstating the value of their accounts, covering up significant losses. When clients withdrew money from their inflated accounts, Gruttadauria would take money from other clients' accounts to make payments. Eventually, Gruttadauria's clients' accounts had a paper value of $278 million, but an actual value of only $1.8 million.

{¶ 26} His clients brought causes of action against the brokerage houses for which he had worked. They alleged numerous securities laws violations, including theft, as well as churning, unauthorized trading, and excessive risk-taking. The brokerage houses sought to compel arbitration. All of the plaintiffs were subject to broadly worded arbitration clauses.

{¶ 27} The lower court found that the allegation of theft placed the dispute outside the scope of the arbitration provision because Gruttadauria's conduct was so beyond what is expected of a broker that it could not have been within the reasonable contemplation of the plaintiffs when they signed their agreements.

{¶ 28} The appellate court, however, found that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements. "The lawsuit by necessity must describe why Gruttadauria was in control of the plaintiffs' money and what the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action without reference to the account agreements, and accordingly, this action is covered by the arbitration clauses." Id., 340 F.3d at 395.

{¶ 29} The *Fazio* test does not act as a detriment to arbitration. It functions as a tool to determine a key question of arbitrability—whether the parties agreed to arbitrate the question at issue. It prevents the absurdity of an arbitration clause barring a party to the agreement from litigating *any* matter against the other party, regardless of how unrelated to the subject of the agreement. It allows courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented. It also establishes that the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable.

{¶ 30} We find that the *Fazio* test is consistent with Ohio law and is not contrary to federal law on the issue of arbitrability. We therefore find that in determining whether a cause of action is within the scope of an arbitration agreement, a state court in Ohio may base that determination on a federal standard that inquires whether the action could be maintained without reference to the contract or relationship at issue.

Judgment affirmed.

MOYER, C.J., RESNICK, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., dissent.

---

**LANZINGER, J., dissenting.**

{¶ 31} I agree that a state court may determine whether a claim is within an arbitration agreement using a federal standard as long as that standard itself is stated correctly and is consistent with Ohio law. Yet because, in my view, the appellate court mischaracterized the federal standard and, by holding that the antitrust claims were not subject to arbitration, minimized Ohio's policy favoring arbitration, I respectfully dissent.

{¶ 32} The majority twice cites the four rules of *Council of Smaller Enterprises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, relating to when arbitration may be compelled, but focuses solely on the first point, the parties' intent to arbitrate. Although indeed the parties cannot be forced to arbitrate unless they have agreed to do so, in Ohio there is a presumption of arbitrability when a contract contains an arbitration clause, especially when the clause is broad in scope. Id. at 666–667, 687 N.E.2d 1352. The clause requiring arbitration or alternative dispute resolution contained within the United Healthcare of Ohio provider agreements is broad, covering as it does any dispute "about [the parties'] business relationship."

{¶ 33} The case relied on by the appellate court, *Fazio v. Lehman Bros., Inc.* (C.A.6, 2003), 340 F.3d 386, determined that allegations of securities violations

were within the scope of an agreement containing an arbitration clause even though the thefts themselves were unrelated to what was expected of a broker. Because the theft claims arose out of activities contemplated by the account agreements, they were subject to arbitration. Id. at 395.

{¶ 34} *Fazio*'s suggestion that courts ask whether the claim could be maintained without reference to the agreements is a preliminary rather than a defining matter and should be put into context within the entire paragraph:

{¶ 35} "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. *Stout [v. J.D. Byrider* (C.A.6, 2000) ], 228 F.3d [709] at 714. A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250–51 (5th Cir.1998) (applying Texas arbitration law under a choice of law provision). Torts may often fall into this category, but merely casting a complaint in tort does not mean that the arbitration provision does not apply. *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir.2002). *Even real torts can be covered by arbitration clauses 'if the allegations underlying the claims "touch matters" covered by the [agreement].'* *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987). We are, however, aware of the Supreme Court's warning against 'forcing unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.' *First Options [of Chicago, Inc. v. Kaplan* (1995) ], 514 U.S. [938] at 945 [115 S.Ct. 1920, 131 L.Ed.2d 985]." (Emphasis added.) *Fazio,* 340 F.3d at 395.

{¶ 36} Thus, *Fazio* recognized the true federal standard to be whether allegations "touch matters" covered by the agreement. Not only tort claims may be covered by an agreement. Statutory antitrust claims have been compelled to face arbitration. As the United States Supreme Court noted in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, "the exclusion of some areas of possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to operate. Thus, insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability." Id. at 625, 105 S.Ct. 3346, 87 L.Ed.2d 444, fn. 13.

{¶ 37} Federal policy strongly favors enforcement of arbitration agreements. See Section 2, Title 9, U.S.Code. In fact, in light of this strong federal policy, the existence of a broad agreement to arbitrate creates a presumption of arbitrability that may be overcome only if "it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 583–584, 80 S.Ct. 1347, 4 L.Ed.2d 1409. See, also, *Smith/Enron Cogeneration Ltd. Partnership v. Smith Cogeneration Internatl., Inc.* (C.A.2, 1999), 198 F.3d 88, 99; *Air Line Pilots Assn. v. Fed. Express Corp.* (C.A.D.C.2005), 402 F.3d 1245, 1248; *Washington Square Securities, Inc. v. Aune* (C.A.4, 2004), 385 F.3d 432, 436; *Inland-boatmens Union of the Pacific v. Dutra Group* (C.A.9, 2002), 279 F.3d 1075, 1078.

{¶ 38} Even if we were to apply the standard mistakenly used by the appellate court, it is difficult to see how antitrust actions may be maintained against the HMO provider "without reference to" the individual provider agreements. *Fazio*, 340 F.3d at 395. The provider agreements constitute the alleged anticompetitive instruments that give the physicians standing to sue. See *Schweizer v. Riverside Methodist Hosps.* (1996), 108 Ohio App.3d 539, 543–544, 671 N.E.2d 312. They are at the core of the Valentine Act claims, for they allegedly contain the evidence of anticompetitive conduct and financial harm. They contain the reimbursement rates allegedly implicating unlawful restraint. The antitrust conspiracy claims relate to the provider contracts that contain the broad clauses requiring arbitration of any dispute "about the business relationship" between the physicians and United Healthcare.

{¶ 39} In short, the *Council of Smaller Enterprises* test, properly applied, calls for arbitration of these claims. The reference test adopted by the court of appeals, asking whether the action could be maintained without reference to the contract, is not consistent with either the federal policy or Ohio's policy of favoring arbitration. The appropriate federal standard is whether allegations underlying the claims "touch matters" covered by the agreements. Because I believe they do in this case, I respectfully dissent.

{¶ 40} I would hold that in determining whether a claim is within the scope of an arbitration agreement, a state court in Ohio may base that determination on a federal standard that inquires whether the allegations underlying the claims touch matters covered by the agreement. I would further stay any claims of the nonsignatory medical societies pending completion of the arbitration.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

---

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Paul M. DeMarco, Terrence L. Goodman, and Jean M. Goeppinger; Strauss & Troy, Richard S. Wayne, Thomas P. Glass, Joseph J. Braun, and Nicole M. Lundrigan; Barrett & Weber, L.P.A., and Michael R. Barrett, for appellees.

Thompson Hine and Stephen J. Butler; Weil, Gotshal & Manges, L.L.P., Gregory S. Coleman, Debra J. Pearlstein, and Elizabeth M. Avery, for appellant.

Tucker Ellis & West, L.L.P., and Irene C. Keyse-Walker, urging reversal for amicus curiae America's Health Insurance Plans.

Issac, Brant, Ledman & Teetor, L.L.P., and Mark Landes, urging reversal for amicus curiae Ohio Manufacturers' Association.

C. Luther Heckman, urging reversal for amicus curiae Ohio Council of Retail Merchants.

Rich, Crites & Wesp, L.L.C., and E. Joel Wesp; Cooper & Kirk, P.L.L.C., David H. Thompson, and Charles J. Cooper; National Chamber Litigation Center, Inc., Robin S. Conrad, and Stephanie A. Martz, urging reversal for amici curiae United States Chamber of Commerce and Ohio Chamber of Commerce.