[Cite as *VIS Sales, Inc. v. KeyBank, N.A.*, 2011-Ohio-1520.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

VIS SALES, INC., et al.

    Appellants/Cross-Appellees

    v.

KEYBANK, N. A.

    Appellee/Cross-Appellant

C.A. No.    25366

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009-06-4195

DECISION AND JOURNAL ENTRY

Dated: March 30, 2011

---

BELFANCE, Presiding Judge.

**{¶1}** Plaintiffs-Appellants/Cross-Appellees VIS Sales, Inc. and Thomas R. Georgeoff, the president of VIS Sales, Inc., (collectively "VIS Sales") appeal the decision of the Summit County Court of Common Pleas concluding both Plaintiffs' and Defendant's claims are subject to arbitration and staying the matter pending arbitration. Defendant-Appellee/Cross-Appellant KeyBank, N.A. ("KeyBank") has likewise appealed this decision. For the reasons set forth below, we affirm in part and reverse in part.

I.

**{¶2}** In 2004, VIS Sales opened a business checking account at KeyBank which was subject to a Deposit Account Agreement which contained an arbitration clause. VIS Sales also established a line of credit with KeyBank in 2004 "enabling VIS Sales to draw on the [line of credit] and deposit funds directly into its checking account as needed. VIS Sales could likewise transfer money from the checking account to pay down the [line of credit]." In addition, VIS

Sales executed a promissory note and a Security Agreement in favor of KeyBank to secure the promissory note. In 2007, the parties entered into a Business Loan Agreement pertaining to the line of credit. In addition, Mr. Georgeoff signed a commercial guaranty and promissory note to secure the line of credit. The line of credit was subsequently extended and the terms of the note were modified. Thus, several documents are connected to the line of credit: the Business Loan Agreement, the promissory note, the commercial guaranty, and the security agreement. VIS Sales also applied for and received a Cash Reserve Credit Account with a limit of $10,000 "which would automatically advance up to $10,000 and place the money in VIS Sales' checking account to prevent an overdraft." The only document containing an arbitration clause was the Deposit Account Agreement.

{¶3} The promissory note became due and payable in October 2008 and thereafter KeyBank demanded payment in full of the line of credit. VIS Sales did not make payment.

{¶4} In 2009, VIS Sales filed a complaint for declaratory judgment, injunctive relief, and damages against KeyBank. In response, KeyBank filed a motion to dismiss. Thereafter, VIS Sales filed an amended complaint for declaratory judgment and injunctive relief. The claim for declaratory/injunction relief essentially sought to invalidate the cognovit provisions in the promissory note and the commercial guaranty related to the line of credit. In addition, VIS Sales' complaint contained a claim for tortious interference, alleging that KeyBank's actions interfered with VIS Sales' attempted business relationship with Wachovia Bank, N.A. and a claim for unjust enrichment, alleging that KeyBank improperly charged VIS Sales fees and removed money from its checking account. KeyBank answered and filed a counterclaim seeking a judgment of confession based upon the promissory note and commercial guaranty, which KeyBank alleged was in default, and a counterclaim/third party claim seeking to take possession

of the collateral under the security agreement. KeyBank later dismissed the third-party defendants.

{¶5} KeyBank then filed several motions, including a motion to stay VIS Sales' claims pending arbitration. VIS Sales responded in opposition. The trial court held a hearing on the issue and ultimately concluded that both VIS Sales' claims and KeyBank's counterclaims were subject to arbitration and stayed the matter pending arbitration.

{¶6} VIS Sales has appealed and KeyBank has cross-appealed, each raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED BY RULING THAT AN ARBITRATION CLAUSE IN ONE OF SEVERAL AGREEMENTS REQUIRED THE SUBMISSION OF ALL DISPUTES TO ARBITRATION."

CROSS-ASSIGNMENT OF ERROR I

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY SUBMITTING KEYBANK'S CLAIMS – CLAIMS PREMISED ON A PROMISSORY NOTE AND GUARANTY – TO ARBITRATION."

{¶7} The trial court ruled that both VIS Sales' claims and KeyBank's counterclaims were subject to arbitration and stayed the proceedings pending arbitration. VIS Sales appears to assert that none of its claims were subject to arbitration as only the checking account contained an arbitration clause and all of VIS Sales' allegations with respect to the checking account were "ancillary." KeyBank asserts that the trial court erred in submitting its counterclaims to arbitration, as its claims were based upon a promissory note and a commercial guaranty.

{¶8} Generally, this Court reviews a lower court's decision to grant or deny a stay pending arbitration for an abuse of discretion. *Ault v. Parkview Homes, Inc.*, 9th Dist. No.

24375, 2009-Ohio-586, at ¶7. However, the primary question before this Court is whether the claims are arbitrable. "The question of whether a controversy is arbitrable under a contract is a question of law for the Court to decide upon an examination of the contract." (Internal quotations and citations omitted.) *May v. Wachovia Securities, LLC*, 9th Dist. No. 24635, 2009-Ohio-4339, at ¶5. Thus, our review is de novo. Id.

{¶9} Pursuant to R.C. 2711.02(B):

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."

Thus, a court must stay a matter pending arbitration if: "(1) the action is brought upon any issue referable to arbitration under a written agreement for arbitration; and (2) the court is satisfied the issue is referable to arbitration under the written agreement." (Internal quotations and citations omitted.) *May* at ¶6.

{¶10} Ohio public policy favors arbitration. *Murray v. David Moore Builders*, 177 Ohio App.3d 62, 2008-Ohio-2960, at ¶8. Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Internal quotations and citations omitted.) *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, at ¶11. "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause[.]" (Internal quotations and citations omitted.) Id. at ¶16. "To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the Court must classify the particular clause as either broad or narrow. An arbitration

clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered the paradigm of a broad clause." (Internal quotations and citations omitted.) Id. at ¶18.

{¶11} However, even the presence of a broad arbitration clause does not make all claims subject to arbitration. See id. at ¶20. The reviewing court still must ask if the parties agreed to arbitrate the issue at hand. Id. "[A] proper method of analysis is to ask if an action could be maintained without reference to the contract or relationship at issue." (Internal quotations and citation omitted.) Id. at ¶24. This test "allows courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented. It also establishes that the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable." Id. at ¶29.

{¶12} "[I]f a dispute even arguably falls within the arbitration provision, the trial court must stay the proceedings until arbitration has been completed." *Tomovich v. USA Waterproofing & Foundation Services, Inc.*, 9th Dist. No. 07CA009150, 2007-Ohio-6214, at ¶8.

{¶13} We begin by noting that this is not the typical case with one contract containing a single arbitration clause. This dispute involves several contracts, only one of which contains an arbitration clause. Thus, our task is to examine the claims and determine which of the claims arose from, or are related to, the contract containing the arbitration provision, i.e. the Deposit Account Agreement. Further, despite the parties' focus on whether different accounts were subject to arbitration, the real issue before this Court is which, if any, of the parties' *claims* are subject to arbitration based upon the arbitration clause contained within the Deposit Account Agreement.

**{¶14}** The arbitration provision at issue is contained in section twenty-five of the Deposit Account Agreement. It provides in pertinent part that:

> "This Arbitration Provision sets forth the circumstances and procedures under which a Claim or Claims (as defined below) may be arbitrated instead of litigated in court. * * * .

> "As used in this Arbitration Provision, the word 'Claim' or 'Claims' means any claim, dispute, or controversy between you and us arising from or relating to this Agreement or your Account(s), including without limitation, the validity, enforceability, or scope of this Arbitration Provision or this Deposit Account Agreement. 'Claim' or 'Claims' includes claims of every kind and nature, whether pre-existing, present, or future, including without limitation, initial claims, counterclaims, cross-claims, and third-party claims, and claims based upon contract, tort, fraud and other intentional torts, constitutions, statute, regulation, common law, and equity (including, without limitation, any claim for injunctive or declaratory relief). The word 'Claim' or 'Claims' is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute, or controversy that arises from or relates to (a) any Account subject to the terms of this Agreement[,] (b) any electronic funds transfer from or to any account, (c) advertisements, promotions, or oral or written statements related to this Agreement or your Account, (d) your application for any Account, and (e) the collection of amounts owed by you to us." (Emphasis added.)

The language emphasized above supports the conclusion that the arbitration clause is a broad clause. See *Academy of Medicine of Cincinnati* at ¶18.

**{¶15}** The Deposit Account Agreement also defines "Account" as "all Checking, Savings and Time Deposit Accounts." It defines "Checking Accounts" as "all Accounts we designate from time to time as Checking Accounts." It defines "Savings Accounts" as "all Accounts we designate from time to time as Savings Accounts." It defines "Time Accounts" as "all Accounts that you deposit with us for a specified period of time and we classify from time to time as time deposits."

**{¶16}** The Deposit Account Agreement also defines both "Personal Accounts" and "Business Accounts[.]" "Personal Accounts means Accounts [KeyBank] classif[ies] from time

to time as personal and offer primarily to consumers for personal, family or household purposes." It defines "Business Accounts" as "all other Accounts and includes Accounts we offer from time to time primarily to businesses, organizations, public entities, commercial and non-profit enterprises, corporations, partnerships, limited liability companies, sole proprietors and associations."

{¶17} The trial court concluded that VIS Sales' promissory note, checking account, and cash reserve credit account all constituted "business accounts[,]" despite the fact that the promissory note and cash reserve credit account are not checking, savings, or time deposit accounts. While the promissory note and cash reserve credit account might be commonly referred to as business accounts, there is no evidence that these agreements fit within the definition of Account stated in the Deposit Account Agreement. Based upon the definitions contained in the Deposit Account Agreement, the only contract that appears to meet the definition of "Account" is the checking account. The trial court further concluded that "[b]ased upon the broad nature of the Arbitration Provision and the interrelationship between all the business accounts with the pending claims," all the claims and counterclaims were subject to arbitration. Thus, the trial court, in large part, based its decision upon the notion that the agreements between VIS Sales and KeyBank were all business accounts; a conclusion that is contrary to how the terms are defined in the Deposit Account Agreement.

{¶18} Nonetheless, this Court "'is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof.'" *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, at ¶12, quoting *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92. Therefore, we independently examine the claims and

counterclaims to determine whether they "aris[e] from or relat[e] to this [Deposit Account] Agreement or [VIS Sales'] Account(s)[.]"

**Claim for Declaratory Judgment/Injunctive Relief**

{¶19} Each of VIS Sales' requests for relief related to its claim for declaratory judgment/injunctive relief essentially seek to bar application of the cognovit provisions. While VIS Sales' allegations under this claim are varied and seem to implicate several contracts, the relief it seeks relates solely to invalidating the cognovit provisions. The only contracts containing cognovit provisions are the promissory note and commercial guaranty, and the amendments thereto, all of which are connected to the line of credit. We do not see how determining whether the cognovit provisions of the promissory note and commercial guaranty are, or are not, valid implicates the Deposit Account Agreement. This claim arose from, and relates to, the line of credit, not the checking account governed by the Deposit Account Agreement containing the arbitration provision. A claim related to the validity of the cognovit provisions could have been brought without reference to the existence of the Deposit Account Agreement. See *Academy of Medicine of Cincinnati* at ¶24. This Court cannot conclude that the parties agreed to arbitrate this claim.

**Claim for Tortious Interference**

{¶20} VIS Sales' claim for tortious interference alleges that "by participating in a financial scheme of reckless profiteering, and intending to earn as many fees as possible from VIS Sales, [KeyBank] interfered with [VIS Sales'] business relationship and caused Wachovia not to enter into a lending relationship with VIS Sales." This claim does not arise from or relate to any of the contracts. The claim essentially alleges that KeyBank wrongfully kept Wachovia from entering into a relationship with VIS Sales. Resolution of this issue does not on its face

implicate the Deposit Account Agreement. We cannot say the parties agreed to arbitrate this claim.

**Claim for Unjust Enrichment**

{¶21} VIS Sales' claim for unjust enrichment alleges that KeyBank "inappropriately charged VIS Sales for fees and removed money directly from VIS Sales' checking account." While it is difficult to discern from the language of the amended complaint, it appears the problematic fees represent overdraft fees that VIS Sales alleges it would not have been charged if KeyBank had not altered the manner it which it processed checks or held funds unavailable and if the cash reserve credit account was being appropriately operated. We conclude this claim clearly arose from and relates to the Deposit Account Agreement that governs the checking account and contains the arbitration provision.

{¶22} We begin by noting that the allegations quoted above implicate the checking account and therefore the Deposit Account Agreement. Further, to the extent that this claim encompasses the allegations that KeyBank improperly processed checks or held funds unavailable, it is also related to the Deposit Account Agreement as both issues are discussed in it. To the extent that VIS Sales alleges that the overdraft protection of the Cash Reserve Credit Account did not function appropriately, the claim also relates to the checking account and Deposit Account Agreement. Mr. Georgeoff testified at the hearing held on this matter that the Cash Reserve Credit Account was an "automatic line of credit[,]" and that the sole purpose of the Cash Reserve Credit Account was to fund potential overdrafts on the checking account. As is evident from Mr. Georgeoff's testimony, and given the fact that the Deposit Account Agreement governs the checking account, the broad language of the Deposit Account Agreement containing the arbitration clause is susceptible to an interpretation that covers this dispute. See *Academy of*

*Medicine* at ¶14. We conclude that VIS Sales' unjust enrichment claim arose from and relates to the Deposit Account Agreement containing the arbitration provision. This claim could not be maintained without reference to the Deposit Account Agreement. See id. Accordingly, this claim is subject to arbitration.

**{¶23}** Based on the foregoing, we sustain in part and overrule in part VIS Sales' assignment of error.

**Counterclaims**

**{¶24}** We note that neither side argued to the trial court that KeyBank's counterclaims were subject to arbitration. Nonetheless, the trial court concluded they were. Assuming that the trial court had the authority to make that determination sua sponte, we conclude it erred in so doing.

**{¶25}** KeyBank's first counterclaim seeks payment of the amount due under the line of credit based upon the promissory note and commercial guaranty. KeyBank's second counterclaim seeks to recover the collateral discussed under the security agreement due to the alleged default under the promissory note and commercial guaranty. These claims do not arise from or relate to the Deposit Account Agreement. The line of credit is governed by several documents: the Business Loan Agreement, a promissory note, a commercial guaranty, and a security agreement. None of these documents contain an arbitration provision. KeyBank could proceed on both counterclaims without reference to the Deposit Account Agreement. See id. The parties did not agree to arbitrate KeyBank's counterclaims.

**{¶26}** Based on the foregoing, we sustain KeyBank's cross-assignment of error.

III.

**{¶27}** In light of the foregoing, we affirm in part, and reverse in part the judgment of the Summit County Court of Common Pleas. VIS Sales' claim for unjust enrichment is subject to arbitration, while the remaining claims and counterclaims are not subject to arbitration. The proceedings are stayed pending arbitration. See R.C. 2711.02(B); *Tomovich* at ¶8.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to all parties equally.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR

APPEARANCES:

ERICA L. EVERSMAN, Attorney at Law, for Appellants/Cross-Appellees.

JOEL K. DAYTON, RANDOLPH L. SNOW, and GORDON D. WOOLBERT, II, Attorneys at Law, for Appellee/Cross-Appellant.