[Cite as *Cent. Accounting Sys., Inc. v. Comprehensive Post Acute Network, Ltd.*, 2014-Ohio-5081.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CENTRAL ACCOUNTING SYSTEMS, INC. d.b.a. HEALTH CARE MANAGEMENT GROUP, | : | |
| | : | CASE NO.   CA2014-03-082 |
| Plaintiff-Appellant, | : | O P I N I O N<br>11/17/2014 |
| - vs - | : | |
| COMPREHENSIVE POST ACUTE NETWORK, LTD, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-05-1498

Finney Law Firm, Christopher P. Finney, Bradley M. Gibson, 4270 Ivy Pointe Blvd., Suite 225, Cincinnati, Ohio 45245, for plaintiff-appellant

Garvey Shearer Nordstrom, PSC, John J. Garvey III, R. Frederick Keith, 300 Buttermilk Pike, Suite 336, Ft. Mitchell, KY 41017 and R. Frederick Keith, 715 Bakewell Street, Covington, KY 41011, for defendant-appellee

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Central Accounting Systems, Inc., dba Health Care Management Group (HCMG), appeals a decision of the Butler County Court of Common Pleas issuing a stay in proceedings and ordering arbitration in the cause HCMG initiated against defendant-appellee, Comprehensive Post Acute Network (the Company).

{¶ 2} HCMG is an Ohio corporation that offers various services in the health-care industry. The Company is an Ohio Limited Liability Company (LLC) comprised of approximately 300 Members, one of which includes HCMG. In 1996, the Members formed the Company to represent their collective interests. These collective interests include the Company serving as a "'messenger model' managed care organization with respect to any and all fee for service third party payor contracts." The Company was also formed to carry out "case management services, Performance Improvement, Credentialing services and other quality oversight as determined appropriate by the Executive Committee." The Company's Executive Committee, which is comprised of elected Member representatives, governs the decisions and business of the Company, and also negotiates contracts with third parties.

{¶ 3} HCMG filed a complaint against the Company alleging that it was entitled to certain documentation regarding annual compilation reports, fees/remuneration paid to Members or managers, and independent management agreements. HCMG alleged that the Company had refused to produce the documentation to which it was entitled, and asked the trial court to compel production. The Company moved the court to dismiss the complaint, or in the alternative, to stay the proceedings and compel HCMG to participate in arbitration according to an arbitration agreement between the parties.

{¶ 4} The parties submitted memoranda in support of their respective positions, and then offered oral arguments to the trial court as to whether arbitration was required. The only issue before the trial court was the interpretation of the arbitration clause within the Fourth Amended and Restated Operating Agreement, which HCMG signed as a Member. The trial court issued a decision staying the proceedings after finding that the arbitration clause within the Operating Agreement controlled, and that the claim filed by HCMG was subject to that arbitration clause. HCMG now appeals the trial court's decision, raising the following

assignment of error.

{¶ 5} THE TRIAL COURT ERRED BY COMPELLING ARBITRATION OF THE DISPUTE BETWEEN A MEMBER AND THE COMPANY BECAUSE THE PLAIN LANGUAGE OF THE ARBITRATION CLAUSE UNEQUIVOCALLY LIMITS ARBITRATION TO DISPUTES "BETWEEN THE MEMBERS."

{¶ 6} HCMG argues in its assignment of error that the trial court erred in its decision to stay the proceedings and compel arbitration.

{¶ 7} According to Ohio's Arbitration Act, R.C. Chapter 2711,

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.[1]

R.C. 2711.01(A). R.C. 2711.02(B) provides that when a valid arbitration clause exists, a court can stay the proceedings in the trial court, and R.C. 2711.03(A) permits a court to compel arbitration.

{¶ 8} Arbitration is a favored method of dispute resolution in the law. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). The strong public policy in favor of arbitration is codified in Ohio's Arbitration Act, as quoted above, which requires a court to stay an action if it involves an issue subject to an arbitration agreement. R.C. 2711.01(A); *See also ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500 (1998). Where there are doubts regarding the application of an arbitration clause, such doubts should be construed in favor of arbitrability.

---

1. Division (B) applies to real estate transactions.

*Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1998).

{¶ 9} A presumption favoring arbitration arises when the claim in dispute falls within the scope of an arbitration provision. *Union Township, Clermont County, v. Union Township Professional Firefighters' Local 3412*, 142 Ohio App.3d 542 (12th Dist.2001), citing *Williams,* 83 Ohio St.3d at 471. "An arbitration clause in a contract should not be denied effect unless it can be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute." *Union Township* at 548. Interpreting the meaning and construction of contracts involves a question of law which appellate courts review de novo. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655, ¶ 7. Therefore, the question of whether a particular claim is arbitrable is one of law for this court to decide. *Id.*

{¶ 10} HCMG signed the Operating Agreement which included the following arbitration clause, in pertinent part, entitled Alternative Dispute Resolution.

> Any controversy or grievance between the Members relating to this Agreement, including without limitation any dispute concerning the contracted services offered by the Company, shall first be submitted to the Executive Committee for mediation. Any controversy which is not successfully mediated shall be submitted to arbitration in Cincinnati, Ohio, in accordance with the Commercial Arbitration Rules of the American Health Lawyers Association then in effect. The decision of the arbitrator(s) and any award pursuant thereto shall be final, binding and conclusive evidence on the parties as shall be non-appealable. Final judgment on such decision and any award may be entered by any court of competent jurisdiction.

{¶ 11} HCMG asserts that the trial court erred in ordering arbitration because the arbitration clause only applies to controversies or grievances "between the Members," rather than to a dispute between a Member and the Company. However, and as the trial court correctly determined, the arbitration clause, as a whole, has a broader reach than limitation to only disputes between individual Members. We agree with the trial court that the arbitration

clause is broad and can be read to include HCMG's claim that it is entitled to certain documents relating to the services offered by the Company.

{¶ 12} While HCMG, as well as the dissent, focus on the fact that the Company is an LLC comprised of Members, rather than simply a Member, we do not agree that such designation removes the Company from the arbitration agreement. Instead, the plain language of the arbitration agreement provides that *any* controversy or grievance between Members regarding the Operating Agreement or *any* services offered by the Company are subject to arbitration. The arbitration agreement expressly provides that any dispute "*without limitation*" regarding services offered by the Company are to be arbitrated. We do not read this broad clause to limit the arbitrability of a claim to only those between two Members. Instead, we read the clause to include disputes between Members and the Company by virtue of the all-inclusive language indicating that *any* controversy, grievance, or dispute specific to the Operating Agreement or services offered by the Company would be arbitrated. Such language indicating the involvement of the Company would inherently include the Company as a potential party to the dispute, and therefore a party subject to the arbitration clause.

{¶ 13} The record indicates that HCMG signed the Fourth Amended Operating Agreement, and that such was adopted by the Company through its Executive Committee.[2] HCMG, in its complaint, relied upon various provisions within the Operating Agreement to establish its entitlement to the requested documentation. HCMG also requested documentation specific to services offered by the Company, including what fees and

---

2. While the record contains the Company's adoption of the Fifth Amended Operating Agreement, rather than a copy of the Company's adoption of the Fourth, there is no dispute that the Company did not adopt the Fourth Amended Agreement. Moreover, HCMG's complaint alleges that the Company is bound to certain duties listed in the Fourth Amended Agreement, and the Company's answer did not deny that it had adopted the Operating Agreement. Instead, the Company indicated in its answer that the Fourth Amended Operating Agreement was its Operating Agreement.

remuneration the Company paid to Members. Therefore, the subject matter of HCMG's suit falls squarely within that which the parties agreed to arbitrate.

{¶ 14} We also find that the disagreement between HCMG and the Company is subject to the arbitration clause because such dispute is between Members. There is no dispute in the record that HCMG is a Member of the Company. Nor is there any dispute that the Company is comprised of Members. While the Company may also carry an LLC designation, it is nonetheless still comprised of Members, its Executive Committee is comprised of Member representatives, and the Company adopted the Operating Agreement subjecting itself to the arbitration clause. Therefore, the dispute is in essence between Members and the arbitration clause was reasonably determined to be applicable.

{¶ 15} The arbitration clause in no way limits what disputes can be arbitrated, and instead, uses broad language such as "any" and "without limitation" to ensure that arbitration occurs. The clause also uses words to express a definitive obligation to arbitrate by stating that disputes "shall" be arbitrated. The language the parties chose to employ when crafting their arbitration clause, while plainly indicating arbitration, also demonstrate the parties' clear intent that any disagreements between the parties would be arbitrated. The Company, by adopting the Fourth Amendment to the Operating Agreement, agreed to be bound by the arbitration clause, and all Members agreed that any disputes related to the Company as a whole would be subject to the arbitration clause, including one Member's request for production of documents. If we were to agree with HCMG and the dissent that the "any dispute" phrase must be between individual Members in order for arbitration to apply, such an interpretation would ignore the language that arbitration is to occur "without limitation" whenever there is any dispute regarding the Company's services.

{¶ 16} The record is clear that the Company is an LLC, but its function as an LLC is premised solely upon its representation of the network of Members. Without the Members,

the Company would not exist. The Company, as a sum of its Members, would have no reason to exist without its stated purpose to represent the collective interests of its Members and to enter into agreements on behalf of its Members. As such, we read the language within the arbitration clause to encompass disputes between two or more individual Members, as well as any disputes between any individual Member and a collective network of Members, i.e., the Company.

{¶ 17} As the Ohio Supreme Court stated, "the overarching issue is whether the parties agreed to arbitrate the issue." *Acad. of Med. of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, ¶ 19. A reading of the broad arbitration clause demonstrates that all Members agreed to arbitrate any disputes that arose between them. This agreement is evidenced by the Members' signing the Operating Agreement, and the Company adopting it. Since HCMG's dispute is between itself and the collection of Members, we find the arbitration clause binding on HCMG's claim. This is especially true where Ohio law patently favors arbitrability and where we cannot say with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute. Moreover, and in response to the reasonable issues raised by the dissent, we recognize that any such doubts should be construed in favor of arbitrability.

{¶ 18} After reviewing the record, we find that HCMG's suit is subject to the arbitration clause, and that the trial court did not err in staying the proceedings and compelling arbitration. As such, HCMG's sole assignment of error is overruled.

{¶ 19} Judgment affirmed.

S. POWELL, J., concurs.

RINGLAND, P.J., dissents.

- 7 -

**RINGLAND, P.J., dissenting.**

{¶ 20} I respectfully dissent from the majority's decision as I would find that the trial court erred in holding that the arbitration clause applies to disputes between Members and the Company.

{¶ 21} In pertinent part, the arbitration agreement provides that, "[a]ny controversy or grievance between the Members relating to this Agreement, including without limitation any dispute concerning the contracted services offered by the Company, shall first be submitted to the Executive Committee for mediation." The trial court and the majority have interpreted that clause as applying not only to disputes between Members, but also to disputes between Members and the Company. I believe that a plain reading of the clause clearly and unambiguously limits the applicability of the clause to disputes between Members.

{¶ 22} The term "including without limitation" modifies the entire preceding phrase: "[a]ny controversy or grievance between the Members." To interpret the "including without limitation" phrase as modifying only "[a]ny controversy or grievance," would require a complete grammatical restructuring of the sentence. Where the language of the agreement expressly states that it applies only to controversies or grievances "between the Members," we cannot redraft the sentence to remove that specification, nor ignore it entirely.

{¶ 23} The majority also finds that the "including without limitation" phrase is inherently meant to apply to the Company because it references disputes "concerning the contracted services offered by the Company." However, it is entirely reasonable that two Members could have a dispute over what services are being offered by the Company without the Company being a party to the dispute. Therefore, I do not find it inherent that the above phrase renders the arbitration agreement applicable to the Company. This is especially true where the preceding phrase specifies who is subject to the agreement and the Company is not included.

{¶ 24} In the alternative, the majority also finds that a dispute between a Member and the Company is in essence a dispute between Members because the Company is comprised of Members. While it is true that the Company is owned by the Members, it is also true that "a limited-liability company exists as a separate legal entity, R.C. 1705.01(D)(2)(e) * * *." *Disciplinary Counsel v. Kafele*, 108 Ohio St. 3d 283, 2006-Ohio-904, ¶ 18. Thus, limited liability companies are treated as separate and distinct from their owners. *First Merit Bank, N.A. v. Washington Square Ents.*, 8th Dist. Cuyahoga No. 88798, 2007-Ohio-3920, ¶15. In addition, the Company's business decisions are not made by the Members themselves, but rather by an Executive Committee that is elected by the Members. Finally, the Operating Agreement itself distinguishes between the Members and the Company. Section 3.4 of the Operating Agreement states that "[n]o individual Member shall have the right to participate in the management and control of the Company's business * * *." Accordingly, I cannot find that a dispute between a Member and the Company, a separate and distinct legal entity, can be interpreted as a dispute between Members.

{¶ 25} While I agree with the majority that Ohio law favors arbitration, I do not find that the clause in the present case is susceptible to an interpretation that covers the asserted dispute. I would find that a plain and ordinary reading of the clause clearly and unambiguously sets forth that it applies only to disputes between Members: a class to which the Company does not belong.